# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Laura L. W.,                                     Case No. 23-cv-2206 (ECW)

      Plaintiff,

v.                                                       **ORDER**

Martin J. O'Malley, Commissioner
of Social Security Administration,

      Defendant.

---

This matter is before the Court on Plaintiff Laura L. W.'s ("Plaintiff") Complaint seeking judicial review of a final decision by the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits and her application for supplemental security income.  (*See generally*, Dkt. 1.)  The parties have filed briefs "present[ing] for decision" Plaintiff's request for judicial review of the final decision of the Commissioner.[1]  (*See* Dkts. 15, 17, 21.)  For the reasons stated below, Plaintiff's request for reversal and remand of the Commissioner's decision (Dkts. 15, 21) is denied and the Commissioner's request that the Court affirm the decision (Dkt. 17) is granted.

---

[1]     As of December 1, 2022, Social Security Actions under 42 U.S.C. § 405(g) are "presented for decision by the parties' briefs," rather than summary judgment motions. Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), Rule 5.

# I.    PROCEDURAL BACKGROUND

Plaintiff filed a claim for disability insurance benefits and a claim for supplemental security income on December 10, 2020 alleging disability beginning March 18, 2020 as to both applications.  (R. 14, 211-21, 222-27, 228-30.)[2]  Her claims were denied initially and on reconsideration.  (R. 67-80, 81-100.)  Plaintiff sought a hearing before an Administrative Law Judge ("ALJ") (R. 130-31) and a hearing took place on May 11, 2022 (R. 40-66).  On July 12, 2022 the ALJ issued a decision denying Plaintiff's application (R. 11-39), and on May 23, 2023, the Appeals Council denied her request for review (R. 1-7), making the ALJ's decision the final decision of the Commissioner.  *See* 42 U.S.C. § 405(h); *see also* 20 C.F.R. §§ 404.981, 416.1481.  Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  (Dkt. 1.)

The Eighth Circuit has described the five-step process established by the Commissioner for determining if an individual is disabled as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant's impairments are so severe that they significantly limit the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has impairments that meet or equal a presumptively disabling impairment specified in the regulations; (4) whether the claimant's [residual functional capacity ("RFC")]  is sufficient for her to perform her past work; and finally, if the claimant cannot perform her past work, the burden shifts to the Commissioner to prove that (5) there are other jobs in the national economy that the claimant can perform given the claimant's RFC, age, education and work experience.

*Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

---

[2]    The Administrative Record ("R.") can be found at Docket 8.

Here, the ALJ determined after a hearing that Plaintiff had severe impairments of alcoholic liver disease, alcohol use disorder, depressive disorder, and generalized anxiety disorder.  (R. 18.)  The ALJ then assessed Plaintiff with the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except occasional stooping, crouching, crawling, balancing, and climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; no exposure to potential workplace hazards such as moving machinery or unprotected heights; no operation of a motor vehicle; no ambulating on wet, uneven, or moving surfaces; no fast paced production requirements defined as work requiring more than frequent handling, fingering, or reaching bilaterally; no operation of a motor vehicle to perform essential functions of the job; limited to simple routine tasks; limited to occasional interaction with coworkers, supervisors, and the general public.

(R. 21-22.)

In formulating this RFC, the ALJ found an examination completed on December 1, 2021 by a physician, Grace A. B. Totoe, MD, FACP, for purposes of evaluating Plaintiff's disability benefits claims, not persuasive.  (R. 30; *see also* R. 1259-61 (Dr. Totoe's examination report).)  The ALJ found "generally persuasive" the opinion of Lyle W. Wagner III, PhD, LP, who evaluated Plaintiff for a description of daily living and mental status examination for the purpose of her disability benefits claims.  (R. 30; *see also* R. 776-80 (Dr. Wagner's evaluation report).)

The ALJ concluded that the state agency medical consultants' opinions that Plaintiff was "limited to light work without any additional non-exertional limitations" was "not persuasive" and imposed additional limitations in the RFC.  (R. 29; *see also* R. 67-71, 81-98 (state agency medical consultant opinions).)  The ALJ also concluded that the state agency psychological consultant who reviewed the record at the initial level and

who opined that there was "insufficient evidence to assess [Plaintiff]'s mental impairments" was "somewhat persuasive" but added additional limitations to the opinion of the state agency psychological consultant who reviewed the record at the reconsideration level.  (R. 29; *see also* R. 74-75, 81-98 (state agency psychological consultant opinions).)  The ALJ noted that the reconsideration-level state agency psychological consultant opined that Plaintiff "has a moderate limitation in concentrating, persisting, or maintaining pace, mild limitations in adapting or managing and interacting with others and no limitations in understanding, remembering, and applying information" and "further opined that claimant is limited to performing routine, repetitive 3-4 step tasks and detailed tasks."  (R. 29; *see also* R. 74-75, 81-98 (state agency psychological consultant opinions).)  The ALJ added the following additional limitations:

> The undersigned finds that a moderate limitation in concentrating, persisting, or maintaining pace is consistent with the record, including claimant's performance on tests of concentration at the consultative evaluation as well as her reports of fatigue and pain. However, the undersigned finds that a moderate limitation in interacting with others is also supported based on the claimant's occasional episodes of confusion and her ongoing fatigue. Moreover, an additional limitation on production paced work is also consistent with the claimant's concentration and pace limitations, as is a limitation to simple routine but not detailed or complex work.

(R. 29.)

The ALJ then found that Plaintiff was not capable of performing past relevant work as a certified nurse assistant or a hairstylist.  (R. 30.)  However, the ALJ did find based on Plaintiff's age, education, work experience, and RFC that Plaintiff could perform the following jobs that exist in significant numbers in the national economy: cuff folder Dictionary of Occupational Titles ("DOT") No. 685.687-014; dowel inspector,

DOT No. 669.687-014; and bench hand, DOT No. 715.684-026.  (R. 32.)  The ALJ
therefore found Plaintiff not disabled at any time "from March 18, 2020, through the date
of this decision, [July 12, 2022]" and accordingly denied disability insurance benefits.
(R. 32-33.)

## II.    FACTUAL BACKGROUND

### A.    Pre-2020 Medical Records

The medical record for Plaintiff before 2020 is limited, and most of the records do
not relate to the impairments the ALJ found severe (alcoholic liver disease, alcohol use
disorder, depressive disorder, and generalized anxiety disorder).  The pre-2020 medical
record consists of the following: records from a January 27, 2019 emergency room visit
for a fall and resulting mouth injury (R. 322-24) and February 13, 2019 notes from a
preventative care visit establishing care with Nicole Groeschi, MD showing normal
physical exam findings, and, relevant here, stating that Plaintiff's abdomen was "soft,
nontender, nondistended."  (R. 325-29.)  The pre-2020 record also contains February 28,
2019 physical therapy notes addressing Plaintiff's reports of back pain, but noting that
Plaintiff "[g]oes to Anytime Fitness, does cardio and weights, started back up in January
after taking a break for two years" and making a plan for Plaintiff to address her chronic
back pain through physical therapy.  (R. 339-40.)  Other records include: more physical
therapy notes dated March 6, 2019 (R. 343-45.); notes from a March 7, 2019 IUD
placement (R. 346-50); notes from March 19, 2019 visit for mammogram with negative
breast cancer findings (R. 351-54); and notes from an August 14, 2019 visit for anxiety,

dysthymia (depression), and gastroesophageal reflux disease without esophagitis (R.

356).

**B.     2020 to 2022 Medical Records**

On March 18, 2020, Plaintiff was admitted to the hospital for alcoholic hepatitis

with ascites presenting as abdominal pain, bloating, and "bright red blood per rectum."

(R. 493-541.)  Plaintiff's hospital course notes state:

> [Plaintiff] is a 43 year old y.o. female with a past medical history significant
> for alcohol abuse and GERD who was admitted on 3/18/2020 with abdominal
> bloating and bright red blood per rectum. Patient endorsed weeks of
> worsening abdominal distension and intermittent bright red blood per
> rectum, culminating in her significant other urging her to seek medical
> attention. Found to have evidence of liver dysfunction with **ascites** and
> elevated lactic acid at the time of admission. Underwent paracentesis with
> removal of 1.1L of transudative fluid in the ED, no evidence of SBP. GI
> consulted. EGD on 3/19 revealed one non-bleeding gastric ulcer,
> colonoscopy on 3/20 unremarkable. She was started on a PPI, as well as lasix
> and spironolactone. She had no clinical symptoms of withdrawal while
> inpatient and was started on a course of baclofen at discharge. Alcohol
> cessation was strongly encouraged.

(R. 541.)  The accompanying notes from her admission history and physical state that

Plaintiff:

> initially minimizes her alcohol use with this writer, however eventually
> admits to drinking approximately a pint of vodka every 1 to 2 days, plus
> intermittent amounts of beer. Blood alcohol on admission was 228 and she
> denies having anything to drink this morning, so may be continuing to
> minimize. Her use may need to be explored further as I was not able to elicit
> more of a history. She reports never engaging in chemical dependency
> treatment in the past and was noncommittal whether she would be willing to
> engage in the future.

(R. 515.)

On March 25, 2020, Plaintiff had a visit with her primary care provider Dr. Groeschi for hospital follow-up after being admitted to the hospital for liver dysfunction with ascites and elevated lactic acid, which resulted in a paracentesis to remove transudative fluid.  (R. 363-68.)  A non-bleeding gastric ulcer was also found, and Plaintiff was diagnosed with alcoholic hepatitis with ascites and alcohol abuse.  (R. 365.) Plaintiff was prescribed lasix[3] and spironolactone[4] to help control fluid in her abdomen. (R. 365.)  Plaintiff's physical examinations showed normal findings except for her abdomen which was "distended, ttp without rebound or guarding, +fluid wave."  (R. 367.)  "Alcohol cessation was strongly encouraged."  (R. 365.)

Plaintiff was seen on March 27, 2020 by Jason Buffington, MD for abdominal pain and was diagnosed with ascites due to alcoholic cirrhosis.  (R. 369.) The provider noted:

> [Plaintiff] presents today for Follow up ascites, see recent notes. hospitalization at St. Mary's Hospital for ascites and increased abdominal pain 3/18-21/20, had paracentesis, negative culture for infection, started on Lasix and Spironolactone. Seen in Emergency Room 3/25 for recurrent symptoms of bloating/ascites, again tap done, and they doubled her spironolactone dose. Now again increased bloating, ascites symptoms, 2 days later. No alcohol for over a week.

---

[3]    "The Food and Drug Administration (FDA) has approved furosemide to treat conditions with volume overload and edema secondary to congestive heart failure exacerbation, liver failure, or renal failure."  https://www.ncbi.nlm.nih.gov/books/NBK499921/ (last visited July 16, 2024).

[4]    "Spironolactone is FDA approved for the treatment of heart failure with reduced ejection fraction (HFrEF), resistant hypertension, primary hyperaldosteronism, edema secondary to cirrhosis."  https://www.ncbi.nlm.nih.gov/books/NBK554421/ (last visited July 16, 2024).

(R. 370.)  Physical examination showed normal results except for her abdomen, which was "distended, mild discomfort with palpation but not acute abdomen."  (R. 372.)  After that visit, Plaintiff visited the Emergency Department ("ED") and reported that she "was in the clinic today for follow up, when she noticed her abdomen was distended and 'hard.'"  (R. 489.)  The visit notes state:

> Patients case discussed with Dr. Malloy who recommended therapeutic paracentesis if necessary. Also recommended increasing lasix to 40 mg per day with hope this would facilitate volume control. Paracentesis accomplished with return of 2 litres [sic] of fluid with no evidence of SBP. Patient discharged after procedure on increased lasix dosage.

(R. 492.)

Plaintiff again appeared in the ED for alcoholic hepatitis with ascites which presented as abdominal pain on April 1, 2020.  (R. 483-88.)  Notes from that visit state:

> Vital signs reveal tachycardia on presentation, stable on exam. Medical records reviewed. Clinically the patient appeared stable. Exam remarkable for a jaundiced female with a distended abdomen that is diffusely tender to palpation with positive fluid wave and shifting dullness. Her history and exam are consistent with ascites. The patient is afebrile and appears well with the exception of abdominal distension. Her fluid analysis 5 days ago was unremarkable. I have low suspicion for SBP Labs ordered. Per my chart review, the patient had a paracentesis on 3/18 with 1.1 liters removed, on 3/25 with 1.8 liters removed, and 3/27 with 2 liters removed. She had an endoscopy completed on 3/19/20 which revealed a 2 mm non-bleeding gastric ulcer in the antrum. No evidence of varices. She had a colonoscopy completed on 3/20/20 which was unremarkable.

(R. 487.)

Plaintiff had a telehealth visit with gastroenterologist Thomas Malloy, MD on April 3, 2020 for "[f]ollow up alcoholic cirrhosis with ascites."  (R. 482.)  Dr. Malloy noted:

Acute alcoholic hepatitis, certainly appearing to be superimposed on cirrhosis. Main complication has been ascites. She was discharged home without salt restriction and on very low-dose Lasix only. Just in the last week, spironolactone has been added. Unfortunately, she has been seen in the emergency room several times and each time diuretic therapy has been increased and she has had large volume paracentesis. I am concerned about the potential for over diuresis and renal failure in this patient at such high diuretic dose.

(R. 483.)  Dr. Malloy recommended that: Plaintiff "needs to absolutely avoid further alcohol use.  I have had a long discussion with her in that regard including the risk of developing decompensated liver disease and not being a transplant candidate because of ongoing alcohol use.  She appears to understand the consequences of drinking again." (R. 483.)

That same day, Plaintiff had a telehealth visit with Dr. Groeschi for abdominal pain.  (R. 374-77.)  Dr. Groeschi noted at the physical examination that Plaintiff appeared, "Alert and oriented.  Fluid speech, linear thought process.  Pleasant and cooperative.  No acute respiratory distress, appears slightly uncomfortable."  (R. 376.)  Dr. Groeschi prescribed Plaintiff pain medication but did not schedule Plaintiff for a "tap" (paracentesis) because she wanted "to give the diuretics a chance to work."  (R. 377.)

Plaintiff saw Dr. Malloy on April 10, 2020 for: "Decompensated alcohol-related cirrhosis and recent alcoholic hepatitis.  She continues to express problems with ascites and increased abdominal girth.  Most recent ultrasound, however, performed 10 days ago showed no fluid.  Certainly, she could reaccumulate fluid in this timeframe."  (R. 478-79.)  Dr. Malloy continued Plaintiff on medication, stated that he would follow her over

the weekend, and scheduled another visit mid-week the next week.  (R. 479.)  He "asked [Plaintiff] to continue to avoid alcohol and stressed the need to remain abstinent."  (R. 479.)

On April 14, 2020 Plaintiff had another telehealth visit with Dr. Groeschi for her ascites due to alcoholic cirrhosis (R. 391-95.)  Dr. Groeschi noted that Plaintiff was alert and orientated, had fluid speech and a linear thought process, and was pleasant and cooperative.  (R. 395.)  Dr. Groeschi stated for the assessment/plan for Plaintiff's ascites due to alcoholic cirrhosis:

> Pain and distension main complaints. Does not sound short of breath on the phone. Plan d/w Dr. Malloy from GI- he will have another virtual visit with her tomorrow and likely plan for scheduled paracentesis in IR. Would like to avoid narcotics due to risk of dependence. Start low dose gabapentin with titration. We discussed both common and potential side effects of prescribed and recommended therapies, as well as expectations for response to treatments. Patient should call our office or return to clinic for evaluation (or in urgent care/ED) if no improvement or worsening of symptoms.

(R. 395.)

Dr. Malloy saw Plaintiff on April 16, 2020 and recommended that Plaintiff have another paracentesis to remove fluid from her abdomen and reported that he was increasing her "diuretic dose over the past two weeks."  (R. 474-75.)  Plaintiff underwent another paracentesis on April 17, 2020 to remove fluid from her abdomen.  (R. 472-73.)  The procedure was successful with no complications.  (R. 472-73.)

On April 30, 2020 Plaintiff saw Dr. Malloy again for: "Alcohol-related cirrhosis with ascites, now with significant improvement on diuretics and salt restriction.  She has not required paracentesis over the last 2 weeks, which is a significant improvement."  (R.

471.)  He continued, "I have commended her on being abstinent from alcohol over the last 6 weeks.  We will continue diuretic therapy at the same dose."  (R. 471.)

Plaintiff had another telehealth visit with Dr. Groeschi on May 29, 2020 due to alcoholic hepatitis with ascites and "in regards to completing [sic] form for unemployment."  (R. 404, 406.)  Dr. Groeschi noted that Plaintiff was alert and orientated, had fluid speech and a linear thought process, and was pleasant and cooperative.  (R. 408.)

Plaintiff saw Dr. Malloy on June 3, 2020 for alcohol-related cirrhosis.  (R. 467-68.)  Dr. Malloy noted during the visit: "She has felt well and has noted no reaccumulation of **ascites** fluid.  There has been no increase in abdominal girth and she denies lower extremity edema.  She has not required paracentesis in nearly 8 weeks."  (R. 467.)  Dr. Mallow continued: that since her hospitalization in March, Plaintiff had dramatically improved and been sober for over 2 months, with "no reaccumulation of ascites nor signs of GI bleeding."  (R. 468.)

On July 13, 2020, Plaintiff had a telehealth visit with gastroenterologist Jon Reich, MD who reported:

-Hospitalized March 2020 for dyspnea and ascites. Portal vein was patent. Total bilirubin 3-5.  Paracentesis with SAAG >1.1. Upper endoscopy with no varices, 2 mm gastric ulcer in the antrum.  Colonoscopy was normal. She did have hemorrhoids though this was not commented on.
–With up titration of diuretics, 200 mg of Aldactone and 40 mg of furosemide per day, had significant decrease in abdominal fluid though persistent abdominal pain. Fluid balance was challenging, as well as management of chronic abdominal pain for which patient reported only improvement with oxycodone
–Paracentesis with 4500 mL of ascites removed April 17, 2020

11

–Significant improvement after 6 weeks of sobriety, June 2020 diuretic dose was decreased to furosemide 40 mg once a day and spironolactone 100 mg twice daily

(R. 465.)  Dr. Reich also reported that Plaintiff appeared "to be controlling her ascites," and "No lower extremity edema. She continues to be sober.  She is also taking thiamine, pantoprazole.  There have been a few days for which she has taken double dose of the spironolactone and furosemide when she feels more bloated in the abdomen.  This is rare."  (R. 465.)

On August 12, 2020, Dr. Malloy saw Plaintiff and stated the following based on the virtual visit:

> [Plaintiff] is a 44-year-old woman, who was hospitalized in early April with decompensated alcoholic liver disease and alcoholic hepatitis with ascites. She required multiple paracenteses during that hospitalization. She has been abstinent from alcohol since that time and has been maintained on diuretic therapy with Lasix and Aldactone. She has not had recurrence of significant ascites and has not required further paracentesis. Her liver enzymes have also dramatically improved off alcohol.

(R. 460.)  Dr. Malloy also discussed how Plaintiff's "most recent laboratory exam from 2 weeks ago showed normal electrolytes, BUN and creatinine" where her "[l]iver enzymes from mid July showed dramatic improvement with isolated elevation of AST at 66 and otherwise normal liver enzymes."  (R. 461.)  Dr. Malloy also opined that Plaintiff's alcohol-related cirrhosis "appears well compensated at present," there had been no "recurrence of ascites on sodium and diuretics" and he "commended her on avoiding alcohol."  (R. 461.)  They "discussed the fact that while her disease is stable now further alcohol abuse could result in decompensated liver disease."  (R. 461.)

Plaintiff reported to the ED on August 24, 2020 complaining of fainting and abdominal pain.  (R. 453.)  Her physical exam showed normal results including no distended abdomen and no fluid wave, except for "positive for abdominal pain" and positive for fainting.  (R. 454, 458.)  Despite Plaintiff's pain, NingMei Hu, MD noted that there was "near resolution of previously noted ascites" and that "mild descending sigmoid wall thickening," possibly related to colitis, was likely responsible for Plaintiff's abdominal pain.  (R. 458.)

Plaintiff's next telehealth visit with Dr. Groeschi due to alcoholic hepatitis with ascites was on September 18, 2020, following which Dr. Groeschi reported "paperwork completed regarding alcoholic liver disease."  (R. 434.)  Dr. Groeschi noted that Plaintiff appeared, "Alert and oriented.  Fluid speech, linear thought process.  Pleasant and cooperative."  (R. 434.)

On October 2, 2020, Plaintiff saw Kristine Kerr, PT for "physical deconditioning" and "impaired mobility."  (R. 436.)  The discharge note states: "The patient was seen for 1 visits [sic].  Treatments included what is listed in this note.  Goals were partially met."  (R. 437.)  Therapist Kerr's objective physical findings from that visit stated:

> Postural Assessment: Overall posture appears to be normal and symmetrical. Grossly she appears fit and normal weight. Gait is balanced. She has no limp. Stride length is shorter secondary to decreased hip extension.
> Range of Motion: Hip: She has 100 degrees of knee-to-chest motion. External rotation is 15 degrees bilaterally and internal rotation is 5 to 10 degrees bilaterally. Knee and ankle: Appear to be within normal limits
> Shoulder: Shoulder motions are within normal limits for flexion and abduction and within functional limits for shoulder rotation. Upper extremity motions appear to be within normal limits otherwise.
> Neck: Motions appear to be normal.

13

> Trunk: Trunk flexion is quite tight through the back and there is limited posterior tilt. Most of the motion comes from her hips. Back extension is mostly stuck in extension neutral. Sidebending [sic] is within functional limits and rotation is 20 degrees bilaterally.
> Strength Testing: Strength of the extremities is general 3/5. Trunk strength is also's [sic] 3/5..
> Balance in sitting: She has good body awareness but has difficulty in holding herself still.

(R. 449-50.)  Therapist Kerr recommended that Plaintiff attend 8 sessions of physical therapy over a 5-week period (R. 450), but there is no evidence in the record that Plaintiff attended any sessions other than the initial evaluation on October 2, 2020.

The record contains no further evidence of Plaintiff's medical care until August 26, 2021, when Plaintiff was admitted to the hospital and discharged a week later on September 3, 2021.  (R. 1298.)  This visit is mostly covered in the record in a later hospitalization of Plaintiff three weeks later: "Pt with hx of recent admission 3 wks ago for similar presentation at which time she was diagnosed with acute bleeding gastric ulcer on EGD for which she received blood transfusions, and she was also treated for suspected SBP and [discharged] on cefdinir, prednisone, and Midodrine."  (R. 1265.)

Plaintiff went to the ED on September 23, 2021 reporting that she had been in the ED 3 weeks prior, had been feeling better, but that her abdominal pain returned 2 days prior.  (R. 1292.)  She denied other symptoms such as "Chest pain, Cough, Diaphoresis, Diarrhea, Dizziness, Dysuria, Fever/chills, Headaches, Less active, Loss of appetite, Nausea, Vomiting, Decreased UOP, Rash, Seizure, Shortness of breath, Sore throat, Syncope, Weakness."  (R. 1286-87.)  The physical examination conducted by Connor Schromm, DO states:

GENERAL: Well-developed, well-nourished, in mild distress. Jaundiced
HEAD: Normocephalic and atraumatic.
EYE: Extraocular muscles are intact. Pupils are equal, round, and reactive to light. Scleral icterus bilaterally
EARS/NOSE/THROAT: Clear oropharynx. Nare patent. Icteric mucosa. Moist mucous membranes.
NECK: Supple. No masses noted. Trachea midline.
RESPIRATORY: Equal breath sounds bilaterally, clear to auscultation. No crackles or wheezing.
CARDIOVASCULAR: Regular rate and rhythm without murmur.
CHEST: No obvious deformities or ecchymoses. Nontender to palpation.
ABDOMEN/GI: Distended abdomen. Generalized tenderness, worse in the upper epigastrium and right upper quadrant. Positive bowel sounds noted. No guarding, no rebound tenderness noted.
MUSCULOSKELETAL: Without any cyanosis, rash. 2+ pitting edema bilateral lower extremities
NEUROLOGIC: Cranial nerves II through XII are grossly intact, follows commands appropriately.
PSYCH: Appropriate mood and affect
INTEGUMENTARY: Warm and dry, no rashes noted.

(R. 1287-88.)  Plaintiff had a diagnostic paracentesis that day to remove fluid from her abdomen.  (R. 1288.)

Plaintiff was then admitted to the hospital the following day on September 24, 2021 "reporting acute worsening of her abdominal pain with distention x2 days with 2 episodes of melanotic stools."  (R. 1265.)  She reported being sober for one month.  (R. 1265.)  She was discharged on October 3, 2021 after the following course of treatment:

Patient was subsequently transferred to the ICU on 9/26/2021 due to hypotension with systolic in the 80s (MAP 50s), after bright red blood per rectum. Octreotide was stopped due to worsening abdominal pain and nausea after initiation. She was stabilized and subsequently transferred back to the hospitalist service on 9/28/2021. Fluid balance optimized with medical therapy, hemoglobin is stable no further GI bleed.

(R. 1265.)  The physical exam done before discharge by Natalie Shim Look-Fong, MD states:

General Appearance: Alert, Oriented x3, NAD, jaundiced
HEENT: NCAT, PERRLA, EOMI, scleral icterus, normal hearing, moist mucosa
Neck: FROM, Supple, no tender lymphadenopathy, no carotid bruits
Respiratory: Intermittent bibasilar rales, no wheezing or rhonchi, no accessory mm use
Cardiovascular: Regular Rate, Regular Rhythm, No Murmur, No Rubs
Abdomen: Soft, mild ruq ttp, mild distention, +BS x4, No rebound or guarding
GU: no cva tenderness
Extremities: +2 peripheral pulses, No Clubbing, No Cyanosis, +3 edema below the knees, +1 edema above the knees to hips
Psych/Mental Status: Normal Affect, No SI/HI
Neurologic: AAOx3, Follows commands & answers questions appropriately
Skin: Jaundice

(R. 1269.)

A mental Medical Source Statement from Lyle Walter Wagner III, PhD, LP dated

November 8, 2021 states:

Based on her Verbal I.Q. in the Average range and results from the current MS exam, [Plaintiff] is capable of understanding, remembering, and following, moderately complex instructions. Based on results from the current MS exam, [Plaintiff] will have Moderate difficulty sustaining attention and concentration. At this time, [Plaintiff] will have Mild to Moderate difficulty in regard to carrying out work-like tasks with reasonable persistence and pace, when solely considering her mental health symptoms and the current mental status examination. It is this examiner's opinion that [Plaintiff] would have Mild difficulty responding appropriately to brief and superficial contact with co-workers, supervisors, and the public. [Plaintiff] will have Mild difficulty tolerating the stress and pressure typically found in an entry-level workplace, when considering only her mental health symptoms.

(R. 780.)  Dr. Wagner further summarized Plaintiff's history of mental health care as:

[Plaintiff] is a 45 year-old Caucasian female, who lives in her father's home, with her father and her friend. [Plaintiff] was last employed in September 2019 at Essentia Health St. Mary's Hospital, where she was a CNA, full-time, for 3 years. She was fired for a HIPPA violation. [Plaintiff] was first diagnosed with Alcoholic Liver Disease in March 2020. She quit drinking

for some period of time, then relapsed, resuming her heavy drinking pattern for about a year until she was again hospitalized on 8/25/2021. She stated that she resumed her sobriety, and was again hospitalized in October 2021 for liver cirrhosis related symptoms. [Plaintiff] moved back to Minnesota 2 weeks ago with her friend, in order to receive better medical care. Based on record review, and data collected in the current evaluation, [Plaintiff] qualifies for the following mental health diagnoses: Alcohol Use Disorder, Severe; and Unspecified Depressive Disorder, Mild.

(R. 780.)

Plaintiff established medical care with Christine Broszko, MD on November 19, 2021, noting some abdominal pain over the 2 days prior.  (R. 785-87.)  Dr. Broszko's physical examination of Plaintiff showed:

General: Appears stated age, alert and comfortable
Lungs: clear to auscultation, no wheezes or rales
Breasts: no skin changes, no dominant masses, no axillary lymphadenopathy
CV: regular rate and rhythm, normal S1 and S2 without murmur or click
Abd: Soft. Mild distention. Mild tenderness to palpation over right upper and right lower quadrants without rebound tenderness, guarding.
Skin: No spider angioma or ecchymosis noted.

(R. 786.)  Dr. Broszko also recommended that Plaintiff get another paracentesis and resume Lasix and spironolactone.  (R. 787.)  The record does not indicate whether Plaintiff received the recommended paracentesis.

Plaintiff again presented to the ED and was admitted to the hospital on January 27, 2022 reporting dizziness, fainting, chest pain, recent head injury, vomiting with blood, and abdominal pain, and was later discharged on February 6, 2022.  (R. 806-1216.) Plaintiff stated that she had been sober since August 2021, and a physician note stated: "Blood alcohol level not checked here but does not seem to be in withdrawal."  (R. 817, 923.)  Her physical exam from January 27, 2022 showed "Constitutional: Alert,. No

distress EYES: Conjunctivae clear HENT: Atraumatic, normocephalic Respiratory: No respiratory distress, normal breath sounds Cardiovascular: Normal rate, normal rhythm, no murmurs GI: Diffuse tenderness with voluntary guarding. Musculoskeletal: No edema. Integument: Warm, Dry Neurologic: Alert & oriented x 3." (R. 819.)  Erin Meyers, MD stated impressions from a paracentesis done on Plaintiff: "1. Status post unsuccessful ultrasound-guided paracentesis.  2. Only mild abdominal ascites is present and the ascitic fluid shifts with patient position and respiration." (R. 825.)  Other notes confirm that "CT of the abdomen and pelvis and paracentesis-attempted but not successful-are unremarkable." (R. 884.)  Nurse notes from January 30, 2022 state that "Pt states sitting position helps with [abdominal] pain." (R. 913.)  Gastroenterologist Mark Virtue, MD noted that Plaintiff had a "Gastric antral ulcer with clean base" and suggested that Plaintiff repeat an upper endoscopy in 6 to 8 weeks to ensure that the ulcer had healed. (R. 975.)

Discharge notes from the hospital state that Plaintiff's hypotension is: "Likely multifactorial from cirrhosis, low albumin, potential adrenal insufficiency.  Hemoglobin stable, patient afebrile with normal lactic acid and no signs of infection.  Hypotension grossly asymptomatic until she needs to [use] spironolactone or Lasix.  Have initiated 3 times daily midodrine to assist with blood pressure support while restarting Lasix and spironolactone." (R. 893.)  Regarding Plaintiff's alcoholic cirrhosis, the notes state: "Patient with known alcoholic cirrhosis with ascites and portal hypertension but without esophageal varices.  Lasix and spironolactone held for low blood pressures but will

restart at lower dose to assist with diuresis as patient does complain of some edema.

Continue lactulose." (R. 893.) Plaintiff's physical examination upon discharge stated:

> General appearance - alert, patient appears tired, and in no distress and oriented to person, place, and time
> Mental status - alert, oriented to person, place, and time, normal mood, behavior, speech, dress, motor activity, and thought processes
> HEENT - sclera anicteric, left eye normal, right eye normal, nares normal and patent, no erythema
> Lymphatics - no palpable lymphadenopathy, no hepatosplenomegaly
> Respiratory - no tachypnea, retractions or cyanosis
> Cardiac - normal rate, regular rhythm, normal S1, S2, no murmurs, rubs, clicks or gallops, no JVD
> Neurological - alert, oriented, normal speech, no focal findings or movement disorder noted
> Musculoskeletal - no joint tenderness, deformity or swelling, full range of motion without pain
> Extremities - peripheral pulses normal, trace pitting edema midway up shins bilaterally, no clubbing or cyanosis
> Skin - normal coloration and turgor, no rashes, no suspicious skin lesions noted

(R. 898.)

Plaintiff appeared in the ED again on March 8, 2022 due to abdominal pain and stated that she started drinking again a few days earlier due to stress at home. (R. 1222.)

Her physical exam results showed:

> Constitutional: Alert, uncomfortable appearing.
> HENT: Clear posterior oropharynx, moist mucous membranes.
> Eyes: Normal pupils. No conjunctival injection appreciated. Mild scleral icterus.
> Neck: Able to fully range. No midline tenderness to palpation.
> Cardiovascular: Regular rate and rhythm, normal S1/S2. No murmurs, rubs or gallops appreciated.
> Pulmonary: Clear to auscultation bilaterally. No wheezes, rales, rhonchi appreciated. Non-labored respirations.
> Abdominal: Moderate tenderness to the right upper quadrant and epigastrium, palpable liver edge.
> Musculoskeletal: No edema.

Neurologic: Cranial nerves, strength and sensation grossly intact.
Skin: Warm and dry without diaphoresis.

(R. 1222.)  Upon discharge, William Bleifuss, MD stated:

Reassessed patient, discussed that workup thus far has been unrevealing, her liver labs are stable, no concern for evolving hepatitis. Her CT scan was also unrevealing, contrast enhancement in the stomach likely represents her GI cocktail, in discussion with Radiology, they have a lower concern for evolving GI bleed at this time. No other hemoglobin relatively stable, absence of any changes in stool, do not feel this is because of her pain. She says she largely feels tired now, pain is mildly improved though not resolved entirely. She otherwise remained vitally stable here, and we have no radiographic or laboratory evidence of worsening intra-abdominal, hepatic etiology. No concern for evolving infection at this time, she does not diffusely peritonitic, does not have significant ascites, I have a low concern for SBP. Patient does feel comfortable going home and following up with her endoscopy is planned at this time, will plan for transfer home.

(R. 1224.)

Plaintiff was assessed for a residential treatment center on April 26, 2022 for alcohol use disorder.  (R. 1480-97.)  During the assessment she reported her last date of use was April 25, 2022.  (R. 1487.)  Plaintiff entered the residential treatment program on May 3, 2022.  (R. 1498.)

### III.   LEGAL STANDARD

Judicial review of an ALJ's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018), or whether the ALJ's decision results from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.* 907 F.3d 1086, 1089 (8th Cir. 2018).  As defined by the Supreme Court:

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding.

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence . . . is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (marks and citations omitted).

"[T]his court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it."  *Nash*, 907 F.3d at 1089 (marks and citation omitted).  "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome."  *Id.*  "In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the [ALJ], the Court must affirm the decision."  *Jacob R. v. Saul*, No. 19-CV-2298 (HB), 2020 WL 5642489, at *3 (D. Minn. Sept. 22, 2020) (citing *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992)).

Under the Act, disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  And a "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3).

With regard to the weight assessed to medical opinions and administrative findings, pursuant to §§ 404.1520c and 416.920c of the Social Security Administration's ("SSA") regulations: "[An ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). When a medical source provides one or more medical opinions or prior administrative medical findings, the ALJ will consider those medical opinions or prior administrative medical findings from that medical source together using the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant (including length and purpose of treatment and frequency of examinations, among other factors), (4) specialization, and (5) other factors (for example, when a medical source has familiarity with the other evidence in the claim). 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5). The most important factors an ALJ considers when the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

The SSA further states:

The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of

this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Michael B. v. Kijakazi*, No. 21-CV-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022) ("The 'most important factors' are supportability and consistency.") (citing 20 C.F.R. § 404.1520c(b)(2)).

The SSA has described supportability and consistency as follows:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853, 2017 WL 168819 (Jan. 18, 2017); *see also* 20 C.F.R. § 404.1520c(c)(1). "An ALJ's discussion of [a medical source's] treatment and examination notes reflects the ALJ's consideration of the supportability factor with respect to their opinions." *Stephanie B. v. Kijakazi*, No. CV 22-837 (JWB/DTS), 2023 WL 3394594, at *1 (D. Minn. May 11, 2023) (citation omitted); *Troy L. M. v. Kijakazi*, No. 21-CV-199 (TNL), 2022 WL 4540107, at *11 (D. Minn. Sept. 28, 2022) (addressing the consistency of the medical source's treatment records with the opinion provided as to functioning in

23

conjunction to supportability). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 404.1520c(c)(2).

The Court has reviewed the entire record and will incorporate discussion of the record below as necessary to explain this Order.

## IV. DISCUSSION

Plaintiff raises one issue for review: "The ALJ's evaluation of consultative examiner Grace Totoe, M.D.'s opinion was legally insufficient and unsupported by substantial evidence." (Dkt. 15 at 1.) In making this argument, Plaintiff contends that the ALJ failed to adequately explain the supportability and consistency factors when determining that Dr. Totoe's opinion was unpersuasive. (*Id*. at 10.) Plaintiff argues that the ALJ failed to adequately explain the rationale used in determining supportability and consistency. (*Id*.) Plaintiff asserts: "[T]he explanations provided by the ALJ are merely boilerplate, conclusory statements that do not create a logical bridge between the evidence and the rejection of the opinion evidence. Such explanations simply 'will not do.'" (*Id*. at 10-11 (quoting *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020)).) She asks the Court to reverse the ALJ's decision and remand the case for further proceedings. (*Id.* at 17.) The Court addresses the supportability and consistency of Dr. Totoe's opinion below.

## A.   Dr. Totoe's Evaluation and ALJ's Summary and Opinion of the Evaluation

On December 21, 2021, Dr. Totoe evaluated Plaintiff for purposes of a disability determination. (R. 1259-61.) Dr. Totoe stated that the reasons Plaintiff sought disability

benefits—based on Plaintiff's subjective complaints and a review of Plaintiff's chart—

was:

> Liver Disease: Diagnosis in March 2020. She was hospitalized in early April with decompensated alcoholic liver disease and alcoholic hepatitis with ascites. She required multiple paracenteses during that hospitalization. She also has had problems with hypokalemia resolving with potassium supplementation. She had negative viral and autoimmune hepatitis serologies. After the hospitalizations she had quit drinking for a period of time and her liver enzymes improved. She moved to Texas for the summer 2021, and was hospitalized while there for one week, in August and again at the end of September for another week, for decompensated liver failure, after a relapse with alcohol. At that time she had anasarca, ascites, and severe abdominal pain. She has now been sober since August 25th, 2021. She is hopeful to get a liver transplant, but first needs to be sober for 6 months.

> Currently she struggles with generalized abdominal pain, ascites, occasional dizziness, generalized malaise and weakness, anorexia. Denies Nausea, vomiting, diarrhea, and pruritis. For her abdominal pain, she has partial relief from sitting and after paracentesis. Her last paracentesis was August 2020. Symptoms are exacerbated with activity. Quality of pain varies achy / dull and frequency is constant. Her extreme fatigue affects her daily living in that she can not participate in normal activities without needing frequent rests, including normal conversations. She expresses difficulty with word finding, concentration, slow thought processing, and attention span. She has a follow up GI appt on Dec. 22, 2021 - at Regions. Her new PCP is Dr Broszko.

> Kidney Disease: Diagnosis also in March 2020. Per chart review there is no documentation of kidney disease. Claimant was told from her PCP appt on Nov. 19th, 2021 that her kidney function has improved.

> She states she cannot work due to extreme fatigue, malaise, concentration issues, abdominal pain.

(R. 1259.)  Dr. Totoe reported the following based on her physical examination of

Plaintiff:

> GENERAL: Looks well, alert, not in any distress, appropriate affect, Aox3. Fluid speech, linear thought process. Pleasant and cooperative.
> SKIN: warm and dry. No jaundice noted.

> HEENT: Head normocephalic, atraumatic. Pupils equal, round and reactive to light. Extraocular muscles intact. No jaundice noted.
> NECK: Supple. JVP not raised. No lymphadenopathy or thyromegaly.
> LUNGS: Air entry is good bilaterally. Breath sounds are bronchovesicular. No wheezes, rhonchi, or crackles.
> CARDIOVASCULAR: Heart sounds Si and S2 present. No M/R/G
> ABDOMEN: Ascites, tender to palpation, BS+.
> Psychiatric: speech and affect appropriate, grossly normal.
> CENTRAL NERVOUS SYSTEM: See attached sheet. Cranial nerves II to XII intact, No visual field defects.
> ROM and MUSCULOSKELETAL: No asterixis.

(R. 1260.)  The results of Plaintiff's motor examination showed:

> Motor exam: reveals average tone and muscle bulk in arms and legs.
> Power: 4/5 in all extremities.
> Grip strength: decreased in B/L extremities.
> Grasp strength: Decreased in B/L extremities.
> Pinch strength: Decreased in B/L extremities.
> Fine motor: intact in R/ L extremity.
> Tone: decreased in R/ L extremity.
> Romberg's: Negative.
> Tandem walking: Normal.
> Heel walking: Normal.
> Reflexes: Normal .
> Gait/station: Normal.
> Sensation: Normal.
> Joint position sense: Intact.
> Vibration sense: Intact.

(R. 1260.)  Dr. Totoe concluded that Plaintiff had: "Liver disease with ascites, generalized malaise, fatigue, abdominal pain, poor concentration, slow thought processing, difficulty with word finding" (R. 1260) and gave Plaintiff the following work limitations:

> • Able to walk for 2 hours in an 8 hour day with rest in between.
> • Able to stand for 1-2 hours in an 8 hour day with resting in between.
> • Able to sit for 2-3 hours in an 8 hour day with intermittent shifting
> • Grip strength is 18.6 in DH
> • Grip strength is 13.2 in NDH

- Grasp strength is decreased in BUE.
- Pinch strength is 9 in DH
- Pinch strength is 9 in NDH
- Able to lift 10 lb frequently in an 8 hour day

(R. 1260-61.)  Dr. Totoe's report also stated:

> Following the exam, the claimant was offered the opportunity to add information, discuss any perceived problems with the exam and was advised that the examining physician does not decide on who qualifies for disability services.

> Based on my examination, the subjective report correlates with the objective findings.

> I am certifying under penalty of perjury that I have been authorized or contracted by the Disability Determination Services to examine the claimant named in this report.

(R. 1261.)

When explaining her RFC, The ALJ summarized Dr. Totoe's consultative

evaluation as follows:

> Claimant attended a consultative evaluation with Grace Totoe, MD, on November 2, 2021. She continued to report a sobriety date of August 25, 2021. She reported continues [sic] issues with abdominal pain, ascites, occasional dizziness, malaise and weakness. She reported she gets relief from her abdominal pain with sitting and paracentesis but noted her last paracentesis was in August 2020. Symptoms are exacerbated with activity. She reported difficulties with word finding concentration, slow thought processing, and low attention span.

> Claimant reported her fatigue was so severe that she could not participate in normal activities without needing frequent rests, including holding a normal conversation. There is no evidence of claimant having difficulty with speaking with her providers or evaluators during the relevant time period. Dr. Totoe observed claimant's speech to be normal and fluid. She looked well and was alert and in no distress. She was fully oriented, pleasant and cooperative. Her affect was appropriate, and her thought processes were linear. It is also notable that, claimant reported she was independent with her activities of daily living.

27

> On examination, she had tenderness to palpation of the abdomen, and ascites. She had 4/5 power in all extremities, as well as decreased grip, grasp, and pinch strength. She had normal range of motion. Her muscle tone and bulk in the arms and legs was normal. Her fine motor skills were intact. Her Romberg's was negative. She had a normal gait. Her tandem and heel walking was normal. Her reflexes and sensation was also intact. (11F)

(R. 25.)

> Later in the opinion, the ALJ explained:

> The undersigned finds the opinion of Dr. Totoe to be unpersuasive. (11F) Dr. Totoe opined that claimant was able to walk for two hours out of an eight hour workday with rests in between. She could stand for one to two hours with resting in between. She is able to sit for two to three hours in an eight hour day with intermittent shifting. She is able to lift ten pounds frequently.

> This opinion limits claimant to essentially less than eight-hours of work per day. This is not well supported nor is it consistent with the record and appears to rely heavily on claimant's subjective reports. It is not consistent with Dr. Totoe's own examination findings, which show some weakness but no other focal findings. It is notable that Dr. Totoe did not provide an explanation for her findings and claimant's own statement that sitting is helpful in relieving her symptoms appears to contradict the need for any limitations on sitting.

> The opinion is also inconsistent with the overall record, including the claimant's lack of treatment or reports of symptoms during significant portions of the relevant time period and the lack of other significant findings on physical examinations throughout the record.

(R. 30.)

## B.    The ALJ's Supportability Analysis

Plaintiff argues that the ALJ failed to explain why she stated that Dr. Totoe's opinion was not supported by Dr. Totoe's own examination findings. (Dkt. 15 at 11.) Plaintiff argues that the ALJ did not adequately discuss Dr. Totoe's specific examination findings and generalized them too broadly as "some weakness but no other focal

findings." (*Id.* (quoting R. 30).)  Plaintiff also assigns error to the ALJ's statement that

Dr. Totoe's opinion "appears to rely heavily on [Plaintiff's s] [sic] subjective reports"

because Dr. Totoe stated that "the subjective report correlates with the objective

findings." (*Id.* (quoting R. 30 and R. 1261).)

The Commissioner counters that the ALJ discussed Dr. Totoe's opinion in two

parts of the written decision; the first when she summarized Dr. Totoe's opinion while

also discussing the medical evidence in the record as a whole, and the second when she

analyzed the opinion's persuasiveness and explained why it was neither supported by Dr.

Totoe's own examination findings nor consistent with the record as a whole.  (Dkt. 17

10-11 (citing R. 25, 30).)  The Commissioner points to places in Dr. Totoe's opinion

where Dr. Totoe's observations about Plaintiff conflict "with Plaintiff's claims of

limitations in those areas."  (Dkt. 17 at 10.)  The Commissioner also argues that

Plaintiff's reports of constant abdominal pain, generalized malaise, and weakness were

not corroborated by Dr. Totoe's objective findings indicating that Plaintiff's physical

condition was largely unremarkable.  (Id. at 11.)

The Court agrees with the Commissioner that the ALJ adequately considered the

supportability of Dr. Totoe's opinion.  The ALJ discussed Dr. Totoe's opinion two times,

both times noting inconsistencies between Dr. Totoe's opinion and Dr. Totoe's own

examination findings.  (R. 25, 30.)  The ALJ noted that Plaintiff reported issues with

word finding, concentration, thought processing, and attention, but that Dr. Totoe noted

Plaintiff's speech was "normal and fluid" and Plaintiff was fully oriented and had linear

though processes.  (R. 25, 30.)  The ALJ did not err in concluding that Dr. Totoe's

observations that Plaintiff "Looks well, alert, not in any distress, appropriate affect,

Aox3. Fluid speech, linear thought process. Pleasant and cooperative" did not support Dr.

Totoe's opinions relating Plaintiff's "fatigue, abdominal pain, poor concentration, slow

thought processing, difficulty with word finding." (R. 1260.) Likewise, Dr. Totoe's

opinions that Plaintiff was limited to walking for 2 hours in an 8-hour work day with rest

in between; standing for 1-2 hours in a 8-hour work day with rest in between; and sitting

for 2-3 hours in an 8-hour work day with intermittent shifting (R. 1260) are not supported

by Dr. Totoe's largely normal physical examination findings relating to Plaintiff's motor

abilities, walking abilities, balance, and strength. (R. 1260.)

The Commissioner argued that the ALJ found it "notable" that "Dr. Totoe did not

provide an explanation for her findings." (Dkt. 17 at 13 (quoting R. 30).) Indeed, Dr.

Totoe noted Plaintiff's reports of malaise and weakness, "extreme fatigue," and

difficulties with processing, concentration, and attention, and further noted that

"[Plaintiff] states she cannot work due to extreme fatigue, malaise, concentration issues,

abdominal pain" (R. 1259)—but Dr. Totoe did not address the lack of any objective

findings when she examined Plaintiff (R. 1260) that would support Plaintiff's reports. It

appears that her conclusions are based on Plaintiff's own subjective reports rather than

objective findings. The SSA's definition of "supportability" specifically states that "[t]he

more relevant the objective medical evidence **and supporting explanations presented**

**by a medical source** are to support his or her medical opinion(s) . . . the more persuasive

the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)

(emphasis added).  The ALJ properly considered Dr. Totoe's failure to explain the disconnect between her objective findings, Plaintiff's reports, and Dr. Totoe's opinions.

Further, the absence of any supporting explanation undermines Plaintiff's argument that: "Dr. Totoe is also a medical professional who is knowledgeable regarding ascites.  Dr. Totoe noted Plaintiff suffered with ascites and calculated that impairment into the overall limitations assigned to Plaintiff in the opinion.  Dr. Totoe considered Plaintiff's overall pain in determining the work-related limitations."  (Dkt. 15 at 11 (citing R. 1260-61.).)  These assertions are speculative.  Dr. Totoe noted Plaintiff's diagnosis of alcoholic hepatitis with ascites in the history section of her report; she noted "ascites" on physical examination; and she concluded that Plaintiff has "liver disease with ascites."  (R. 1259-60.)  But she did not link Plaintiff's ascites and pain with the assigned limitations, and she otherwise failed to explain how she evaluated Plaintiff's ascites in relation to her conclusions or Plaintiff's work limitations.  (R. 1259-61.)

For all of these reasons, the Court finds that the ALJ's supportability decision was supported by substantial evidence and complied with the regulations.

**C.    The ALJ's Consistency Analysis**

Plaintiff argues that "the ALJ fail[ed] to point to any specific evidence in the record directly contradicting Dr. Totoe's conclusions" and instead "provides a blanket, cover-all statement that does not accurately reflect the record," frustrating meaningful review.  (Dkt. 15 at 12.)  Plaintiff specifically takes issue with the ALJ's statement regarding the inconsistency between Dr. Totoe's opined sitting limitations and Plaintiff's "own statement that sitting is helpful in relieving her symptoms."  (*Id*. at 13 (quoting R.

30).)  Plaintiff also argues that the ALJ's analysis of the consistency of Dr. Totoe's opinion does not adequately reflect the evidence in the record of Plaintiff's poor core strength and stability, decreased lumbar range of motion, hypertonic postural muscles, and decreased endurance.  (Dkt. 15 at 13 (citing R. 340).)  Plaintiff argues that her testimony was consistent with Dr. Totoe's opinion.  (*Id*. at 14.)  She also argues that the ALJ did not rely on any medical interpretation to arrive at her conclusions about Plaintiff's physical capacity, and instead "relied upon her own lay interpretation of evidence to assess what she believed was the most Plaintiff can perform physically." (*Id*.)  Finally, Plaintiff argues that "the ALJ limited Plaintiff to frequent reaching, handling and fingering without providing substantial evidence to support this finding" and that "[g]iven the evidence as a whole and Dr. Totoe's objective findings, greater limitations in reaching, handling and fingering are warranted."  (*Id*. at 15.)

The Commissioner counters that the ALJ's consistency decision was supported by substantial evidence.  The Commissioner argues that the ALJ pointed to specific evidence that contradicted Dr. Totoe's opined limitations and that Plaintiff relies too heavily on her subjective reports when attempting to contradict the ALJ's conclusions.  (Dkt. 17 at 14.) The Commissioner argues that the ALJ is not required to discuss every piece of evidence submitted, and that Plaintiff's failure to provide evidence sufficient to support her claim "'should not be held against the ALJ,' when, as here, 'there is medical evidence that supports the ALJ's decision.'"  (*Id*. at 16 (quoting *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).)  The Commissioner argues that an ALJ is allowed to make reasonable inferences, and that in regard to Plaintiff's argument about her reaching, handling, and

fingering limitations, the ALJ included manipulative limitations that were more restrictive, that is, more beneficial to Plaintiff than any other provider accounted for in the record.  (*Id*. at 17-18.)

The Court first addresses and rejects Plaintiff's claim that the ALJ's statements about the consistency of Dr. Totoe's opinion with other information in the record were simply blanket statements that did not adequately convey the record.  (Dkt. 15 at 12.) When discussing Plaintiff's RFC, the ALJ gave an overview of why Plaintiff's subjective claims about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the record as a whole.  (R. 22-24.)  The ALJ stated:

> Claimant has been hospitalized on numerous occasions related to alcoholic liver disease but prior to late 2021 the degree of exacerbation was less, and claimant was attending some regular treatment that resulted in some improvement through the summer of 2020. Claimant did have some 3/5 weakness noted at a physical therapy intake assessment in October 2020 and 4/5 weakness at the consultative evaluation in November 2021.
>
> However, other physical examinations were not indicative of significant complications on an ongoing basis. Mentally, the claimant has had no treatment (until her inpatient chemical dependency treatment starting in late April 2022). Her mental status examination at the consultative evaluation was within normal limits and there are no significant abnormal mental status examinations in the record.
>
> Notably, claimant has significant difficulties with alcohol dependence. She had periods of sobriety throughout the relevant time period and her conditions certainly did improve with sobriety overall.
>
> However, the undersigned does not find claimant's alcohol use material. Even considering her relapses, complications, and hospitalizations, there is no continuous 12-month period during which claimant could not sustain at least the reduced range of work set forth in the residual functional capacity. In particular, claimant's generally intact findings at both the physical and mental consultative evaluations are inconsistent with the alleged severity of claimant's symptoms.

> There is also insufficient support for a need for excessive absences for a consistent 12 month basis, as claimant rarely had treatment for her impairments in mid-2020 to mid-2021, and while she has had increased symptoms as of late 2021, these have not continued for a continuous 12-month period. Moreover, as claimant is currently in chemical dependency treatment there is no evidence that claimant's impairments will cause ongoing disabling symptoms and limitations for a 12 month period. (13F)

(R. 23-24.)

Then, the ALJ conducted a thorough review of the record evidence beginning with Plaintiff's hospitalization in March 2020 for alcoholic hepatitis with ascites until Plaintiff's entrance into chemical dependency treatment in April 2022. (R. 24-28.) The ALJ also discussed Plaintiff's testimony and other subjective statements about her symptoms throughout the record. (R. 22-23, 28-29.) After a discussion of all this evidence, the ALJ discussed the state agency medical consultants' opinions, Dr. Totoe's opinion, and Dr. Wagner's opinion, analyzing the persuasiveness of each. (R. 29-30.) The ALJ stated that Dr. Totoe's opinion was "inconsistent with the overall record, including the claimant's lack of treatment or reports of symptoms during significant portions of the relevant time period and the lack of other significant findings on physical examinations throughout the record." (R. 30.)

The Court has discussed the relevant medical records above and will not repeat them here. A careful review of those records supports the ALJ's opinion that Plaintiff lacked medical treatment or reports of symptoms during months-long intervals of the relevant time period, including a lapse of treatment or symptoms from October 2020 (R. 436-37) to August 2021 (R. 1298). "An individual is considered disabled for purposes of

Social Security disability benefits if she is 'unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.'" *Tereather T. v. Kijakazi*, No. 22-CV-3216 (DJF), 2023 WL 8355944, at *1 (D. Minn. Dec. 1, 2023) (quoting 42 U.S.C. § 1382c(a)(3)(A)). "In general, the burden of proving the existence of disability lies with the claimant." *Tristan J. v. Kijakazi*, No. 21-CV-248 (TNL), 2022 WL 3701450, at *1 (D. Minn. Aug. 26, 2022) (citing 20 C.F.R. §§ 404.1512(a), 416.912(a)). There was also evidence in the record that Plaintiff's condition substantially improved when she was not drinking alcohol and that Plaintiff was admitted into in-patient chemical dependency treatment at the conclusion of the relevant time period, substantiating the ALJ's claim that Plaintiff did not meet the criteria of a medically determinable impairment lasting for a continuous period of not less than twelve months. (R. 460.) *See Tereather T*, 2023 WL 8355944, at *1. Thus, the ALJ's conclusion that Dr. Totoe's opinion was inconsistent with the record because of gaps in treatment or symptoms is supported by the record.

The Court turns to Plaintiff's argument that the ALJ's consistency analysis does not adequately reflect the evidence in the record of Plaintiff's poor core strength and stability, decreased lumbar range of motion, hypertonic postural muscles and decreased endurance. (Dkt. 15 at 13 (citing R. 340).) The record shows gaps where care was recommended for Plaintiff, but there is no evidence that Plaintiff continued that care, including the absence of any evidence that Plaintiff engaged in the 8-session course of physical therapy recommended by Therapist Kerr on October 2, 2020. (R. 449-50.)

35

There also is no evidence that Plaintiff received the paracentesis recommended by Dr. Broszko on November 19, 2021.  (R. 787.)  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."  *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)); s*ee also Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability."); 20 C.F.R. §§ 404.1530(b), 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled. . . .").  Moreover, the record supports the ALJ's conclusion that there was a lack of other significant physical findings on physical examinations throughout the record to support the claimed symptoms.  (*See, e.g.*, R. 449-50, 484, 458, 786, 819, 898, 1222, 1224, 1269, 1287-88.)

The Court turns to Plaintiff's argument that the ALJ erred in finding Plaintiff's statements regarding sitting were inconsistent with Dr. Totoe's opined sitting limitations. (Dkt. 15 at 13.)  Sufficient evidence exists in the record to support the ALJ's statement that sitting helps Plaintiff with her symptoms.  For example, Plaintiff testified that she sometimes has to "have a pillow behind [her] back to try to keep sitting up straight" and to relieve her back pain, but that sitting down helped her after she did something like cooking or cleaning around the house that required a significant amount of her energy. (R. 53.)  Nurse notes from January 30, 2022 state that "Pt states sitting position helps with [abdominal] pain."  (R. 913.)  Plaintiff reported to Therapist Kerr on October 2, 2020 that "[s]ymptoms are decreased with sitting position changing and cracking her back."  (R. 449.)  And the state agency medical consultants also opined that Plaintiff

could "Sit (with normal breaks) for a total of: About 6 hours in an 8 hour workday" (R.

76)—limitations which were **less** restrictive than those imposed by the ALJ.  In sum,

substantial evidence supports the ALJ's conclusion that Dr. Totoe's sitting limitations

were overly restrictive based on Plaintiff's own reports.

Plaintiff's final argument is that "the ALJ limited Plaintiff to frequent reaching,

handling and fingering without providing substantial evidence to support this finding"

and that "[g]iven the evidence as a whole and Dr. Totoe's objective findings, greater

limitations in reaching, handling and fingering are warranted."  (Dkt. 15 at 15.)  Plaintiff

did not identify what medical record in the "evidence as a whole" supports her argument.

(*Id.*)  Indeed, Plaintiff's physical findings on physical examinations throughout the record

do not support Dr. Totoe's opinion on Plaintiff's reaching, handling, and fingering

limitations, as no issues were observed on examination or reported by Plaintiff.  (R. 449-

50, 484, 458, 786, 819, 898, 1222, 1224, 1269, 1287-88.)  The state agency consultants

did not opine that any manipulative limitations were appropriate.  (R. 70, 86.)  And, as

stated above, Plaintiff's failure to undergo her recommended physical therapy in October

2022 intended to address symptoms, including those relating to reaching (e.g., shoulder

flexion and extremity strength), undermines her disability claims.  *See* 20 C.F.R.

§§ 404.1530(b), 416.930(b).  The ALJ's decision to discount Dr. Totoe's opinions as to

reaching, handling, and fingering limitations is supported by substantial evidence.

Further, Plaintiff's suggestion that the ALJ prevented the VE from "provid[ing]

testimony concerning the effect that greater reaching and manipulative limitations may

have on the ability to do sedentary work" (Dkt. 14 at 16) is not well taken given Plaintiff

was represented by counsel at the hearing before the ALJ (R. 42) and the counsel asked the VE questions at the hearing without limitation by the ALJ (R. 64-65).

For all of these reasons, the Court concludes that the ALJ's finding that Dr. Totoe's opinions discussed above were inconsistent with the record is supported by substantial evidence and complied with the articulation requirement of the regulations.

In sum, the Court finds the ALJ's assessment of the persuasiveness of Dr. Totoe's opinion supported by substantial evidence and that the ALJ adequately addressed consistency and supportability when forming her conclusions. Remand is not required based on the ALJ's treatment of Dr. Totoe's opinion.

* * *

The Court, therefore, denies Plaintiff's request for reversal and remand of the Commissioner's decision and grants the Commissioner's request that the decision be affirmed.

## V. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Plaintiff's request for remand of the Commissioner's decision (Dkt. 15) is **DENIED**;

2. The Commissioner's request that the Court affirm the Commissioner's decision (Dkt. 17) is **GRANTED**; and

3. The Remote Announcement of Decision Hearing set for September 19, 2024 02:00 PM (Dkt. 22) is **CANCELLED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED:  July 16, 2024                    <u>*s/Elizabeth Cowan Wright*</u>
                                         ELIZABETH COWAN WRIGHT
                                         United States Magistrate Judge